769 A.2d 905

**In the Matter of the LICENSE OF Raymond B. THOMPSON, Sr. to Practice Law in Maryland.**

**Misc. No. 8, Sept. Term 2000.**

Court of Appeals of Maryland.

April 10, 2000.

Bedford T. Bentley, Jr., Secretary, State Bd. of Examiners, Annapolis, for Petitioner.

Raymond B. Thompson, Sr., Silver Spring, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BELL, Chief Judge.

In this case, proffering that the evidence clearly indicates that the respondent, Raymond B. Thompson, Sr., was admitted in error, the Board of Law Examiners (the "petitioner" or the "Board"), recommends that this Court, pursuant to Rule 21 of the Rules Governing Admission to the Bar, revoke the respondent's license to practice law. We shall accept the petitioner's recommendation.

The respondent, then a member of the District of Columbia Bar, filed his Applicant's Questionnaire and Affidavit For Admission to the Bar of the State of Maryland on December 29, 1983. He took and passed the Summer 1985 Maryland Out of State Attorneys Bar Examination. Scheduled to be admitted to the Bar on December 12, 1985, he filed, on November 27, 1985, an updating oath with the petitioner, in which he certified that the information in his Questionnaire and Affidavit continued to be correct and that there had been no change. Two days before being admitted to the Bar, however, on December 10, 1985, in a telephone conversation with the Secretary of the Board, the respondent disclosed that he was the subject of disciplinary proceedings in the District of Columbia. He further advised that jurisdiction's Disciplinary Board had recommended that he be suspended from the practice of law for six months, a decision that he had appealed to the District of Columbia Court of Appeals, whose decision was then pending.

As a result, by letter to the Clerk of the Court of Appeals, dated December 11, 1985, the Board noted an exception to the respondent's admission. The respondent was not admitted, as he was advised he would not be. The Board Secretary also reported that he asked the respondent to obtain copies of the documents, including the complaint and subsequent pleadings or responses, on file with the District of Columbia Grievance Committee and the ultimate decision of the Committee. He requested that the respondent's entire file be returned to the Board for further action pending the disposition of the respondent's case by the District of Columbia Court of Appeals. The

file was returned, but apparently no exception was noted on the Order Nisi at the Court of Appeals.

Subsequently, by letter dated April 1, 1986, the Board acknowledged the receipt from the respondent of certain documentation concerning the respondent's case and formally requested him to "officially advise this office regarding the disciplinary matter pending against you at such time when the District of Columbia Court of Appeals reaches a decision in the case and furnish a full copy of the Court's Opinion." The respondent did not respond to the letter or supply the documentation requested. Moreover, the record does not reflect the disposition of the disciplinary matter.

The record does reflect that the respondent was the subject of other disciplinary proceedings in the District of Columbia as a result of a representation between January 1986 and August 1987. *See In Re: Thompson,* 583 A.2d 1006, 1009 (D.C.App. 1990) (Appendix). He was disbarred by the District of Columbia Court of Appeals, effective January 14, 1991. *Id.* at 1008.

The respondent was admitted to the Maryland Bar on February 3, 1998. He did not file another Questionnaire and Affidavit, update the Oath of Out of State Attorney that he filed on November 27, 1985, take another Bar examination or supply the information requested in the April 1,1986 letter from the Board. Rather, according to the respondent, he contacted the Board by telephone in January 1998 to inquire concerning the date that he successfully passed the attorneys' examination. When he was informed, he asked about the procedures for admission and was told that certain documents would be forwarded to him for completion. The letter the respondent received from the Clerk of the Court of Appeals indicated that his petition for admission had been approved by the Court of Appeals on the favorable recommendation of the Board. It also apprised the respondent of the mail-in procedure for being sworn and enrolled as an attorney: appear before a notary to complete the statutory oath of attorneys, a copy of which was enclosed, and return the oath, along with a

check or money order, payable to order of the Clerk of the Court of Appeals.

It was not until September 27, 2000 that the Board became aware of the respondent's disbarred status in the District of Columbia. At that time, Bar Counsel informed the Secretary of the Board of that fact. Subsequently, after speaking with the respondent and unsuccessfully urging him to consent to disbarment, the petitioner, in a report to the Court, contained in a letter dated November 2, 2000, conveyed to this Court the recommendation that is the subject of this opinion. In consideration of the report and recommendation of the Board, the Court, on November 15, 2000, issued an order for the respondent to show cause why his license to practice law should not be revoked. Thereafter, after consideration of the petitioner's answer to the Show Cause and the respondent's response, the Court, on January 5, 2001, immediately suspended the petitioner from the practice of law, pending a hearing before the Court. That hearing was held March 1, 2001.

Rule 13 (a) of the Rules Governing Admission to the Bar of Maryland addresses the eligibility of out-of-state attorneys for admission to the Maryland Bar.[1] It provides:

"(a) Eligibility for admission by attorney examination— Generally. A person is eligible for admission to the Bar of this State under this Rule if the person

"(1) is a member of the Bar of a state;

"(2) has passed a written bar examination in a state;

---

1. When the respondent originally applied for admission, the applicable rule was Rule 14, section (a) of which provided:

"a. If any member of the Bar of another State ... of the United States ... applies for admission to the Bar of this State ... he shall file with the Board [of Law Examiners] a petition, under oath, addressed to the Court of Appeals, in which he shall state

"(i) that he intends to practice law in this State ...;

"(ii) each jurisdiction in which, and each Court by which petitioner was admitted to the Bar ...;

"(iii) that for at least five of the seven years immediately preceding the filing of his petition he has been regularly engaged ... as a practitioner of law...."

"(3) has the professional experience required by this Rule [2];

"(4) successfully completes the attorney examination prescribed by this Rule; and

"(5) possesses the good moral character and fitness necessary for the practice of law."

Thus, to be eligible for admission to the bar of this State, in addition to the other criteria prescribed by the Rule, an out-of-state attorney must be "a member of the Bar of a state."

The procedure by which a successful candidate for admission to the bar is recommended to the Court and his or her admission is ratified is prescribed by Rule 10.[3] *See* Rule 13(n),[4] as to out-of-state attorneys. After receiving from the Board a report of the names of the successful candidates, along with the Board's recommendation for admission, *see* Rule 10(a), the Court shall enter, and publish in the Maryland Register at least once before ratification, an order, containing the names and addresses of all persons recommended for admission, including those conditionally recommended. The

---

**2.** The required professional experience is defined in Rule 13(b), as follows:

"(b) Required professional experience. The professional experience required for admission under this Rule shall be on a full time basis as (1) a practitioner of law as provided in section (c) of this Rule; (2) a teacher of law at a law school approved by the American Bar Association; (3) a judge of a court of record in a state; or (4) a combination thereof."

**3.** The reporting of the list of successful candidates and the recommendation in respect thereto is required to be done "as soon as practical after each examination." There is not, however, any time restriction on the viability of a recommendation for admission that has been ratified. That is a matter that the Rules Committee may want to consider.

**4.** Rule 13(n) of the Rules Governing Admission to the Bar of the state of Maryland provides:

"The Board shall file a report and recommendations pursuant to Rule 10. Proceedings on the report, including the disposition of any exceptions filed, shall be as prescribed in that Rule. If the Court determines that the petitioner has met all the requirements of this Rule, it shall enter an order directing that the petitioner be admitted to the Bar of Maryland on taking the oath required by law."

Court shall also fix a date at least 30 days after the filing of the report for ratification of the Board's recommendations. *See* Rule 10(b). This allows exceptions, which may be filed with the Court before ratification of the Board's report and, for good cause shown, thereafter and before the candidate's admission to the Bar, relating to any relevant matter. *See* Rule 10(c).[5] "On expiration of the time fixed in the order entered pursuant to section (b) of this Rule, the Board's report and recommendations shall be ratified subject to the conditions stated in the recommendations and to any exceptions noted under section (c) of this Rule." Rule 10(d).

The petitioner argues that the foregoing evidence is clear, the respondent was admitted to the Maryland bar in error, since he was not a member of the District of Columbia Bar or that of any State, an eligibility requirement for admission, *see* Rule 13(a)(1), at the time when he was admitted. Therefore, on that basis, it urges the Court to revoke the respondent's license to practice law. The petitioner relies on Rule 21, governing suspension or revocation of the license of attorneys ineligible for admission. That Rule provides:

"If an attorney admitted to the Bar of this State is discovered to have been ineligible for admission under circumstances that do not warrant disbarment or other disciplinary proceedings, the Court of Appeals may, upon a recommendation by the Board and after notice and opportunity to be heard, suspend or revoke the attorney's license. In the case of a suspension, the Court shall specify in its order the

---

**5.** Rule 10(c) also provides:

"The Court shall give notice of the filing of exceptions to the candidate, the Board, and the Character Committee that passed on the candidate's application. A hearing on the exceptions shall be held to allow the exceptant and candidate to present evidence in support of or in opposition to the exceptions and the Board and Character Committee to be heard. The Court may hold the hearing or may refer the exceptions to the Board, the Character Committee, or an examiner for hearing. The Board, Character Committee, or examiner hearing the exceptions shall file with the Court, as soon as practicable after the hearing, a report of the proceedings. The Court may decide the exceptions without further hearing."

duration of the suspension and the conditions upon which the suspension may be lifted."

The respondent sees the matter quite differently. As he sees it, the critical times for purposes of Rule 13 eligibility are when the required petition for the attorney's examination is filed and when that examination is passed. He maintains that, "[a] fair reading of Rule 13 in its entirety demonstrates that the provisions refer to the eligibility of an out-of-state attorney proving through a petition that he is qualified to take the examination through which he could be admitted as a member of the Maryland Bar." That the Rules Governing Admission to the Maryland Bar do not have any provisions requiring the updating of the application is, the respondent believes, supportive of that position. Moreover, the respondent stresses that he relied on the Clerk of the Court of Appeals, who sent him the oath and the petitioner, who recommended him for admission, for the legality of his admission. Acknowledging his disbarment in the District of Columbia, "an event which occurred in his professional life over seven years before his admission to the Maryland Bar and of which [he] is not proud, but for which he has suffered the consequences," he asks this Court not to treat this case as if it is one of reciprocal discipline.

The respondent also questions whether there are any provisions in the Rules, noting that the petitioner has not pointed to any, that prevents a disbarred lawyer, who passed the examination prior to disbarment in another jurisdiction, from being admitted in Maryland. He argues:

"The only theory advanced by the Board, is that the admission was in error. In the instant case, the Respondent was admitted almost thirteen years after passing the examination and over seven years after being disbarred in another jurisdiction. He made no representation to the Board, in order to induce the Board's recommendation to the Court of Appeals for his admission. The rules on their face are intended to prevent such an attorney, who files a petition after disbarment to take the attorney's examination, not an attorney similarly situated as the Respondent, who has

passed the examination prior to disbarment, and who is sworn in several years after disbarment without misrepresenting his status either orally or in writing."

Finally, the respondent asserts that, rather than admitted in error, he was recommended for admission by the Board and that this Court has the discretion to consider the totality of the circumstances and decline to revoke his license, which he earnestly urges the Court to do.

█ Rule 13(a) is clear. It speaks in terms of eligibility and it enumerates five criteria, all of which must be met. Thus, to be eligible for admission to the Maryland Bar, it is necessary that a person applying comply with each of the eligibility requirements. Consequently, if a person fully complies with each of requirements (2) through (5), that person would still not be eligible for admission to the bar unless he or she also met criterion (1).

And compliance must coincide with the time of admission. There is simply nothing in the rule to support the respondent's contention that eligibility need only exist when the application is filed and when the examination is passed. Indeed, just the opposite seems to be what the Rule contemplates. In *Attorney Griev. Comm'n of Maryland v. Keehan,* 311 Md. 161, 167, 533 A.2d 278, 281 (1987), for example, we commented on the purpose of the predecessor to Rule 13:

"Rule 14 is designed to afford a benefit to lawyers who have practiced lawfully for at least a minimum period of time. The benefit occurs because a lawyer who meets the Rule's practice requirements is excused from taking the comprehensive two-day bar examination normally required of those who seek admission to practice in Maryland. Instead, the out-of-state-attorney applicant needs to submit to a test of but three hours duration, with subject matter limited to practice and procedure and professional ethics. Board [of Law Examiners] Rule 3.

"The reason for this privilege rests on the assumption that a lawyer who has regularly engaged in the practice of law, as a chief means of earning the lawyer's living over a period of

years, has sufficient legal knowledge to demonstrate at least minimum competence; hence, it is not necessary to apply the rigors of the full examination to make that determination."

We agree with the petitioner; when the respondent was admitted to the Maryland bar, he was ineligible for admission.[6] He was no longer a member of the District of Columbia Bar and, whether or not he met the professional experience prong of the qualifying criteria, it is arguable that he also does not have the requisite moral character. He was disbarred for violating District of Columbia Disciplinary Rules 9–103(A) (failure to preserve identity of client funds)[7] and 1–102(A)(4) (dishonesty involving misappropriation of client funds).[8] It is well settled in this State that misappropriation, by an attorney, of funds entrusted to his or her care "is an act

---

6. Rule 21 contains the qualifier, "under circumstances that do not warrant disbarment or other disciplinary proceedings." We do not decide whether the circumstances surrounding the respondent's admission, his failure to disclose his intervening disbarment, were themselves sufficient to constitute grounds for disbarment.

7. District of Columbia Disciplinary Rule 9–103(A), now codified as Bar Rule 1.15, provided:

"All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

"(1) Funds reasonably sufficient to pay bank charges may be deposited therein.

"(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved."

8. District of Columbia Disciplinary Rule 1–102(A)(4), now codified as Bar Rule 8.4(c), provided:

"A lawyer shall not:

\* \* \* \*

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

infected with deceit and dishonesty and ordinarily will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction." *Attorney Griev. Comm'n of Maryland v. Sabghir,* 350 Md. 67, 84, 710 A.2d 926, 934 (1998); (quoting *Attorney Griev. Comm'n v. Williams,* 335 Md. 458, 474, 644 A.2d 490, 497 (1994); *Attorney Griev. Comm'n v. Casalino,* 335 Md. 446, 644 A.2d 43, 46 (1994); *Attorney Griev. Comm'n v. White,* 328 Md. 412, 417, 614 A.2d 955, 958 (1992); *Attorney Griev. Comm'n v. Bakas,* 323 Md. 395, 403, 593 A.2d 1087, 1091 (1991); *Attorney Griev. Comm'n v. Ezrin,* 312 Md. 603, 608–09, 541 A.2d 966, 969 (1988)). We also agree with the petitioner that the appropriate remedy is the revocation of the respondent's license to practice law in this State.

■ We are not persuaded by the respondent's arguments. To be sure, Rule 13 reaches the person who applies to take the out-of-state examination after disbarment. But in our view, it also applies to the person who applies to take the examination and passes it, but is disbarred before being admitted. In both cases, there is necessarily a failure at the time of admission of one of the essential requirements for admission, membership in the bar of a state, and, in both cases, there is a failure to disclose the material fact of the disbarment.

■ The respondent makes much of the fact that he sought the direction of the Clerk of the Court of Appeals and, when he received it, he did no more than follow it. He discounts, however, the role that his failure to disclose the material fact of his intervening disbarment played in the advice he was given. It is, of course, true, as we have seen, that neither Rule 10 nor any other of the Rules Governing Admission to the Bar of Maryland imposes a time limitation on the viability of an admission recommendation by the Board. Nevertheless, had either the Clerk or the Board been informed, and thus made aware, of the respondent's intervening disbarment, it would not have been powerless to stop the respondent's admission. Indeed, it is safe to say that either would have "excepted" to the respondents admission and brought the

matter to the Court's attention, even though the time for excepting to the recommendation for admission had long since passed. The Court, pursuant to Rule 10(b), could, and undoubtedly would, have entertained the "exception," for failure to qualify for admission at the time of admission, certainly would seem to constitute "good cause shown."

■ The respondent has repeatedly stated that he was under no obligation, so far as the Rules prescribed, to update his application. As to whether the rules prescribed such an obligation, he may be right. As a matter of fact, however, it is clear that the respondent had such an obligation in this case. On November 27, 1985, the respondent executed an Oath of Out Of State Attorney. The form indicated that it was "[r]equired for updating Application and Character Information." Moreover, execution of the oath was required, "[f]ailure to comply will necessitate that you not be recommended to the Court of Appeals for admission after successfully passing the examination pursuant to Rule 14." Most important, labeled, *"Very Important,"* the form advises, "[t]his Oath also is of a continuing nature. You are required to update the Oath if any changes occur between the date of its execution and the date of your admission to the bar." One of the matters as to which oath was made was "that all of the matters and facts contained in my Out of State Attorney Petition and Applicant's Questionnaire and Affidavit ... are still true and correct and no changes have taken place with respect to my personal situation which would reflect unfavorably on my qualifications to be admitted as a member of the Maryland Bar...." The respondent's petition and Questionnaire identified him as a member of the District of Columbia Bar. That change alone would have been required to be reported; it certainly reflected unfavorably on the respondent's qualifications to be admitted to the Maryland Bar.

We do agree with the respondent that this Court has the discretion to consider the totality of the circumstances and determine whether to revoke the respondent's license. We

have done so and reached a different result than that urged by the respondent.

THE RECOMMENDATION OF THE BOARD OF LAW EXAMINERS IS ACCEPTED. THE LICENSE OF RAYMOND B. THOMPSON, SR. TO PRACTICE LAW IN MARYLAND IS REVOKED. COSTS TO BE PAID BY THE RESPONDENT.