50 A.3d 1066

**In the Matter of the Application of Nicholas Hamilton CRAMER for Admission to the Bar of Maryland.**

**Misc. No. 19, Sept. Term, 2006.**

Court of Appeals of Maryland.

Aug. 21, 2012.

Byron L. Warnken, Esq. of Warnken, LLC, Towson, MD, for applicant.

Argued before BELL, C.J.,* RAKER, *CATHELL, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER (Retired, Specially Assigned), JJ.

PER CURIAM.

In this case we are asked to decide whether to grant the petition for admission to the Maryland Bar of Nicholas Hamilton Cramer, who omitted multiple requirements on his initial application to the bar, including his criminal history, the character questionnaire, his credit report, and the lawsuits to which he was a party. In addition, Mr. Cramer continuously displayed a lack of candor in only addressing the gaping omitted sections upon request and by supplementing requisite application material in an untimely, piecemeal fashion. Accordingly, we determine that Mr. Cramer does not possess the requisite moral fitness and character to be admitted to the Maryland Bar.[1]

---

* Raker, J. and Cathell, J., now retired, participated in the hearing and conference of this case while active members of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, they also participated in the decision and adoption of this opinion.

1. *Rule 5(a)* of the Maryland Rules Governing Admission to the Bar states in pertinent part:

## I. BACKGROUND

The facts are undisputed. On October 30, 1998, Mr. Cramer was arrested in Los Angeles, California for driving under the influence of alcohol. The court documents revealed that Mr. Cramer initially pled not guilty which was later withdrawn and a plea of no contest was entered in its place. As a result of his arrest and conviction for DUI, Mr. Cramer's privilege to drive was suspended. The court, in 1999, placed Mr. Cramer on probation for 36 months and ordered him to pay fines and restitution in the total amount of $1,247.00. Further, as a condition of his probation, the court required Mr. Cramer to successfully complete a three month long first offender program. The suspension of Mr. Cramer's privilege to drive was lifted seven months later. Mr. Cramer, however, did not disclose on his application for admission to the Maryland Bar the occurrence of his arrest and conviction for DUI in California, nor did he explain that when his California license to drive expired, he did not renew it. Moreover, he did not explain that his privilege to drive had been suspended, and reinstated, prior to its expiration. Further, by failing to attach a certified copy of his entire driving history from the Motor Vehicle Authority, the information reported with regard to his driving record was incomplete and misleading.

On February 2, 2004, Mr. Cramer was arrested again and charged with DUI, failure to stay in the appropriate lane, failure to activate lights, reckless driving and driving without a license. The offenses occurred in Runnemede, New Jersey. The New Jersey court found Mr. Cramer guilty of DUI, but not guilty of the other charges. The trial judge ordered the suspension of Mr. Cramer's license for six months and ordered that he pay $250.00 in fines.

---

(a) **Burden of Proof.** The applicant bears the burden of proving ... the applicant's good moral character and fitness for the practice of law.

*Md. Rule 5* (2004).

Hereinafter all references to a rule or the rules are to the Rules Governing Admission to the Bar of Maryland in effect in 2004.

In June of 2005, Mr. Cramer was arrested in the District of Columbia and charged with disorderly conduct involving a confrontation with a Metro Transit Police Officer. Mr. Cramer began shouting epithets at the Officer after the Officer ordered Mr. Cramer to stop trekking down the ascending escalator, and instead take the proper moving staircase. The Officer promptly arrested Mr. Cramer and escorted him to a local precinct where Mr. Cramer spent the night in a holding cell. The next day, Mr. Cramer was arraigned, paid a $25.00 fine, and was released. He later admitted to the Board of Law Examiners that he had been drinking earlier on that evening but was not intoxicated and did not believe alcohol was the cause of the offense.

On May 20, 2005, a month prior to the June incident, Mr. Cramer filed an application with the State Board of Examiners ("Board") for admission to the Maryland Bar pursuant to *Rule 2.*[2] On the application, Mr. Cramer failed to disclose his criminal history, *infra,* and left many requisite items blank, including the questions regarding his credit history and credit delinquencies. In addition, Mr. Cramer indicated in response to Question 7 that he had been "dropped, suspended, placed on probation, or expelled or requested to resign from a school," but did not complete the question by attaching any explanation of the cause, circumstances, or outcome. As to question 5 of the application—requiring the applicant to list any and all places of residency for the past ten years—Mr. Cramer only provided his residence history for the prior eight years. His responses to question 10 regarding a complete list of all lawsuits except divorce and criminal proceedings to which he was a party (sections (a), (b), and (c)) of the application were incomplete. Mr. Cramer declared that he had both a civil judgment in his favor and a second judgment against him, but he did not provide any details as to either judgment or attach

---

**2.** *Rule 2* provides in pertinent part:

(a) **By Application.** A person who meets the requirement of Rules 3 and 4 may apply for admission to the Bar of this State by filing an application for admission accompanied by the prescribed fee, with the Board.

certified copies of those judgments and failed to respond to section (c) altogether. Pursuant to *Rule 2(d)*[3] and in accordance with *Rule 5(b)(1)*,[4] Mr. Cramer's bar application was forwarded to a member of the Character Committee for the Fifth Appellate Circuit.

During the Committee's investigation, the member assigned to the investigation requested that Mr. Cramer provide supplemental information for those sections on the application that Mr. Cramer left incomplete. Mr. Cramer provided an explanation of his academic probation and an explanation as to why he did not submit details regarding his criminal history, but failed to actually provide a record of his criminal history. Additionally, he did not provide a credit report and he failed to list the lawsuits he had been a party to as required by Question 10. The Committee member subsequently recommended that the Committee conduct a hearing regarding Mr. Cramer's application pursuant to *Rule 5(b)(2)*[5] because there

---

**3.** *Rule 2(d)* provides in relevant part:

> **Preliminary Determination of Eligibility.** On receipt of an application, the Board shall determine whether the applicant has met the pre-legal education requirements set forth in Rule 3 and in Code, Business Occupations and Professions Article, § 10–207. If the Board concludes that the requirements have been met, it shall forward the character questionnaire portion of the application to a Character Committee. If the Board concludes that the requirements have not been met, it shall promptly notify the applicant in writing.

**4.** *Rule 5(b)* provides in relevant part:

> **Investigation and report of character committee.** (1) On receipt of a character questionnaire forwarded by the Board pursuant to Rule 2(d), the Character Committee shall (a) through one of its members, personally interview the applicant, (b) verify the facts stated in the questionnaire, contact the application's references, and make any further investigation it finds necessary or desirable, (c) evaluate the applicant's character and fitness for the practice of law, and (d) transmit to the Board a report of its investigation and a recommendation as to the approval or denial for the application of admission.

**5.** *Rule 5(b)(2)* provides in pertinent part:

> If the committee concludes that there may be grounds for recommending denial of the application, it shall notify the applicant and schedule a hearing. The hearing shall be conducted on the record

were grounds for denial. When Mr. Cramer was made aware of the investigating member's recommendation for a hearing, he e-mailed the member a portion of his credit report that he copied and pasted into a new document. Mr. Cramer also e-mailed the member a document containing a list of criminal proceedings in which he was involved. A hearing was held on January 27, 2006, at which time Mr. Cramer waived his right to counsel and proceeded *pro se*. At that hearing, Mr. Cramer testified as to his own favorable views of his character. No other witnesses were called to testify.

The Committee hearing record revealed that Mr. Cramer omitted requisite portions of the application because he did not allow himself an adequate amount of time to complete the application before the filing deadline. Mr. Cramer submitted an incomplete application with the intent to supplement missing documents at a later date because he allegedly did not want to make any errors by stating erroneous information in haste. Mr. Cramer testified, however, that he failed to file any supplement, acting under the assumption that the Board of Law Examiners would do a criminal investigation of his background and discover all of his offenses. During the hearing, Mr. Cramer also testified that he knew he was required to file a supplement and believes he did fill out and send in the proper form, but acknowledged that the written supplement was never received by the Board and he failed to retain a copy of the supplement for his records.

The record developed before the Committee also revealed that Mr. Cramer only indicated on his application for admission to the Maryland Bar that his California license had expired. He failed to include the fact that, as a result of his driving under the influence conviction, his driving privileges were suspended. Moreover, he failed to furnish a driving record necessitated by his suspension. According to Mr. Cramer, he had not possessed a valid driver's license in the past three years and believed he did not need to note the

and the applicant shall have the right to testify, present witnesses and to be represented by counsel.

suspension of his driving privilege on his Bar application. Mr. Cramer testified that he should have disclosed several infractions on his driving record and provided certified copies of the docket entries for the following items: (1) a citation in June 2005 for disorderly conduct; (2) a conviction for driving under the influence in April, 2004, in the State of New Jersey; (3) a conviction for driving under the influence in 1999 in the State of California; and (4) four speeding tickets between 1993–94. The hearing record shows that Mr. Cramer made an attempt to retrieve documentation from the courts in New Jersey, the District of Columbia, and California but could not get certified copies of any of the docket entries. Mr. Cramer was unable to secure certified docket entries from the court in New Jersey because that court requires individuals to retrieve such documents in person. He chose not travel to New Jersey during the month in between his phone call to the court and the time of the hearing in Maryland. Mr. Cramer was able to obtain a docket sheet from both the California court and District of Columbia court but failed to realize the distinction between an uncertified and certified copy. When questioned about the edited credit report he submitted after his interview with the investigating Committee member, Mr. Cramer explained that he believed he only needed to provide a list of items indicating outstanding debts and not a full report. He also stated that he attempted to contact these outstanding creditors, but, he was not financially able to resolve these matters; however, he is aware that financial stability and debt management are considered by the Board to determine whether to recommend an applicant for admission. At the time of the hearing, Mr. Cramer had student loan balances of approximately $71,000.00 which were in a deferred state, in addition to a number of other small balances overdue.

The Character Committee determined that Mr. Cramer's failure to disclose so many items raised an issue as to whether he possessed the candor and truthfulness necessary for admission to the Maryland Bar, but ultimately the Committee recommended his admission. In their conclusion, the Committee reasoned that,

[t]here is a very close question of whether [Mr. Cramer] should be denied admission to the bar and forced to start the application process over in order to ensure complete disclosure. On the other hand, his explanations appear to be sincere. He has demonstrated a willingness to satisfy all disclosure requirements. He was very respectful and considerate in the Character Committee hearing. Further, the substance of any one of the infractions that has been disclosed to the Character Committee would probably not, in and of itself, be sufficient to deny him admission to the bar. Thus, the focus of the Character Committee is on his candor and truthfulness about information that he should have disclosed in the application process.

Pursuant to *Rule 5(c)*[6], the State Board of Law Examiners gave Mr. Cramer an opportunity to be heard on September 8, 2006. Mr. Cramer was advised to retain counsel and present witnesses before the Board. Again, Mr. Cramer waived his right of representation at the Board hearing and chose not to present any witnesses.

The Board hearing record revealed that Mr. Cramer declined to correct his application during his character interview. Instead, he only provided the information when the interviewer asked Mr. Cramer to address completely his failure to fill in the blanks on his application. The Board also questioned Mr. Cramer's inability to answer "yes" or "no" questions on the application, specifically in relation to his testimony that portions of his application were blank due to his failure to allocate an appropriate amount of time to complete the application in the first instance. Mr. Cramer admitted that he had no proper justification for failing to answer simple "yes" or "no" questions, especially with regard to the question asking appli-

---

**6.** *Rule 5(a)* provides in relevant part:

 **Hearing by board.** If the Board concludes after review of the Committee's report and the transcript that there may be grounds for recommending denial of the application, it shall promptly afford the applicant the opportunity for a hearing on the record made before the Committee.

cants to indicate whether they have ever been convicted of a crime.

The Board entered its findings of fact as outlined in its Report dated February 20, 2007. The Board found, among other facts, that Mr. Cramer passed the July 2005 Maryland Bar Examination. Essentially, Mr. Cramer "filed a mostly incomplete Application for admission to the Bar of Maryland." Key items were left blank, "including [answers to] the questions regarding criminal actions, credit and credit delinquencies for which the applicant has several issues." Mr. Cramer also provided inaccurate information, "such as the status of his driving privileges." Furthermore, although Mr. Cramer submitted additional information to the Character Committee Investigator "in a piecemeal fashion," and supplemented documents, his application was still incomplete. Specifically, as to his credit report, the Board found that Mr. Cramer "submitted an out of date credit report with his application instead of answering the questions with regard to finances." To complicate matters even more, "when the Character Committee Investigator told [Mr. Cramer] it was unacceptable, [he] submitted a redacted credit report[; however,] when it was made clear that [the redacted report] was also unacceptable, a full credit report was submitted." The Board also found based upon Mr. Cramer's testimony that " 'he self diagnosed' that he had depression, but never sought treatment or professional help." In addition, "the applicant attended AA meetings" and was court ordered to participate in a first time offenders alcohol program as a condition of his probation for his first alcohol related offense in 1998. However, Mr. Cramer "had no other counseling and did not attend substance abuse support other than that ordered by the Court." "Many documents relevant to the applicant's character and fitness were not produced by the applicant until after repeated request of the Character Committee Investigator." Lastly, as to his debts, Mr. Cramer "did not present any evidence that he followed up on paying his outstanding creditors or disputing the debts although he testified at the Character Committee hearing that he was 'committed to continuing' work on his debt situation."

The Board noted that Mr. Cramer "was unable to pay down his debt, yet he testified at the Character Committee hearing that his plan was to incur further debt by attending an LLM program in China."

As to its conclusions with regard to the applicant's fitness to practice law, the Board recommended unanimously that Mr. Cramer's application be denied because

the Applicant has not demonstrated that he possesses the requisite moral character and fitness to be a member of the Maryland Bar. This conclusion is based on a pattern of disregard for the law, poor judgment, a lack of candor and possible mental health issues relating to alcohol, anger management and depression.

The applicant failed to submit an application that revealed the issues regarding criminal actions, debts and academic history. The Character Committee member had to prod the applicant to provide information and documentation that was correct and mostly complete. The applicant's continued disregard of his obligation to disclose material facts on his application reflects adversely on his fitness to practice law. He has exercised poor judgment with regard to alcohol consumption, the bar admission process, his debts and disregard for law.

Pursuant to *Rules 5(c)* and *(d)*,[7] the matter was set for a hearing before this Court for the applicant to show cause why

---

7. *Rule 5(c)* and *(d)* provide in relevant part:

(c) **Hearing by board** .... If the Board decides to recommend denial of the application in its report to the Court, the Board shall first give the applicant an opportunity to withdraw the application. If the applicant withdraws the application, the Board shall retain the records. Otherwise, it shall transmit to the Court a report of its proceedings and a recommendation as to the approval or denial of the application together with all papers relating to the matter.

(d) **Review by Court.** (1) If the applicant elects not to withdraw the application, after the Board submits its report and adverse recommendations the Court shall require the applicant to show cause why the application should not be denied.

(2) If the Board recommends approval of the application contrary to an adverse recommendation by the Committee, within 30 days

his application for admission to the Bar should not be denied. At that juncture, he was represented by counsel.

## II. STANDARD OF REVIEW

The issue before us is whether, on this record, Mr. Cramer met his burden of proof that he possessed the moral character to practice law in the State of Maryland. *In re Application of Strzempek,* 407 Md. 102, 962 A.2d 988 (2008); *In re Application of Stern,* 403 Md. 615, 629, 943 A.2d 1247, 1255 (2008); *In re Application of Hyland,* 339 Md. 521, 535, 663 A.2d 1309, 1316 (1995); Rule 5(a) of the Rules governing admission to the Bar. An applicant must possess good moral character for admission to any Bar, denoted by "those qualities of truth-speaking, of a high sense of honor, of granite discretion, of the strictest observance of fiduciary responsibility." *Application of Strzempek,* 407 Md. at 112, 962 A.2d at 993; *Application of Stern,* 403 Md. at 629, 943 A.2d at 1255; *Application of Brown,* 392 Md. at 54, 895 A.2d at 1055–65 (2006); *Application of Hyland,* 339 Md. at 535, 663 A.2d at 1316 (stating that "the test of present moral character is whether, 'viewing the applicant's character in the period subsequent to his misconduct, he has so convincingly rehabilitated himself that it is proper that he become a member of a profession which must stand free from all suspicion' "). Additionally, "it is a given that good moral character includes truthfulness and candor, and absolute candor is a requisite of admission to the Maryland Bar." *Application of Strzempek,* 407 Md. at 112, 962 A.2d at 993; *Application of Stern,* 403 Md. at 634, 943 A.2d at 1258; *Application of Brown,* 392 Md. at 58, 895 A.2d at 1058.

---

after the filing of the Board's report, the Committee may file with the Court's exceptions to the Board's recommendation. The Committee shall mail copies of its exceptions to the applicant and the Board.

(3) Proceedings in the Court under this section shall be on the records made before the Character Committee and the Board. If the Court denies the application, the Board shall retain the records.

 The Board's recommendation to deny Mr. Cramer admission to the Bar is entitled to great weight. *See Application of Stern,* 403 Md. at 629, 943 A.2d at 1255; *Application of Hyland,* 339 Md. at 536, 663 A.2d at 1316; *In re Application of Charles M.,* 313 Md. 168, 178–80, 545 A.2d 7, 12 (1988); *In re Application of K.B.,* 291 Md. 170, 177, 434 A.2d 541, 544 (1981). This Court, however, is charged with the responsibility to conduct an independent evaluation of the applicant's moral character based upon testimony and evidence submitted before the Committee and the Board. *Application of Stern,* 403 Md. at 630, 943 A.2d at 1255; *Application of Brown,* 392 Md. at 55, 895 A.2d at 1056; *Application of Hyland,* 339 Md. at 536, 663 A.2d at 1316; *Application of Charles M.,* 313 Md. at 178–80, 545 A.2d at 12; *Application of K.B.,* 291 Md. at 177, 434 A.2d at 544; *In re Application of Allan S.,* 282 Md. 683, 690–91, 387 A.2d 271, 276 (1978).

## III. DISCUSSION

 Mr. Cramer argues that he did not intend to deceive the Board by leaving many sections on his application blank or by providing inaccurate or incomplete information. Instead, Mr. Cramer contends that he was merely negligent in haphazardly submitting an incomplete application due to poor time management and that he intended on supplementing information at a later date. Mr. Cramer also asserts that he omitted key portions of the application under a misapprehension that he would be asked questions during his Character interview, and afterwards, he could provide the information he did not include in his application. Mr. Cramer points out that when the Character Committee asked him questions during the hearing he responded truthfully and was sincere in his desire to complete the application and provide all necessary information. Additionally, Mr. Cramer maintains that his eventual voluntary disclosure of his academic probation and clarification of civil lawsuits and disclosure of criminal proceedings further supports his claim that he did not intend to deceive the Board. Mr. Cramer argues that he has met his burden of proof and his admission should be granted. We are unpersuaded.

In our recent cases concerning bar admission we have emphasized that, "it is a given that good moral character includes truthfulness and candor, and *absolute candor is a requisite of admission to the Maryland Bar.*" (Emphasis added.) *Application of Stern,* 403 Md. at 634, 943 A.2d at 1258; *Application of Brown,* 392 Md. at 58, 895 A.2d at 1058. Although Mr. Cramer did accept blame for his omissions and eventually did provide all of the necessary information, he did so only at the behest of the Character Committee member and in an untimely, piecemeal fashion. Even so, the information that Mr. Cramer did manage to provide to the Committee member was insufficient and he failed to provide all necessary documents until after the Character Committee hearing. While Mr. Cramer accepted full blame for his omissions and views his conduct as merely negligent, we see it rather as a reflection of his lack of candor.

In *In re Application of G. L. S.* an applicant's candor and truthfulness was called into question after he failed to include a complete record of all criminal proceedings to which he had been a party. 292 Md. 378, 383, 439 A.2d 1107, 1110 (1982). The applicant listed only a date and courthouse, but left the "Nature of Proceedings" and "Disposition" columns blank. *Id.* What the applicant failed to disclose is that he was convicted of armed robbery and was incarcerated in a federal penitentiary for six years out of the 10–year sentence he received. 292 Md. at 379, 439 A.2d at 1108. The Character Committee held a hearing to determine whether the applicant had adequately disclosed his conviction and whether he was sufficiently rehabilitated and possessed good moral character. 292 Md. at 380, 439 A.2d at 1110. The Committee found, and this Court subsequently agreed, that the applicant "furnished sufficient information to alert the Committee to the need for further investigation and inquiry." 292 Md. at 382, 439 A.2d at 1111. In the case at hand, however, Mr. Cramer left an entire section blank and did not give any dates of convictions or indicate the courts in which he appeared. Therefore, there was no information that would alert the Committee for further investigation into Mr. Cramer's criminal record until he began

to address the incomplete sections during his interview with the Character Committee member. The Committee member recommended a hearing after Mr. Cramer continued to withhold information and documentation that the Committee member had requested that Mr. Cramer provide.

Question 19 on the application for admission to the Bar requires applicants "to ensure that [their] responses are accurate and current at all times until [they are] formally admitted," and to "advise the Board immediately in writing of any changes of the information disclosed." The only change or piece of information Mr. Cramer advised the Board of was his change in address. Despite recognizing he had a duty to disclose material facts, Mr. Cramer filed his bar application without completely providing all necessary documents until after his Character Committee hearing.

The implication of Mr. Cramer's failure to disclose material facts and supplement necessary information is further exacerbated by his apparent alcohol problem and general disregard for the law. This Court has denied admission to the Bar to applicants who have a criminal record and have failed to demonstrate post-conviction rehabilitation. In *In Re Application of K. B.*, 291 Md. 170, 434 A.2d 541 (1981), this Court denied the application of a candidate who disclosed on his bar application that he had committed bigamy but never faced criminal charges for the offense and committed two acts of fraud; one committed two weeks after filing his bar application and one occurring on the day after he took his first bar examination. In denying the application, the Court reasoned that the applicant's course of criminal activity occurred while the applicant was an adult and continued after his completion of his law school studies. *K. B.*, 291 Md. at 180, 434 A.2d at 546. Likewise, Mr. Cramer's DUI in 2004 occurred during law school and he testified that he had been drinking (apparently too much) the night he was arrested for disorderly conduct, which occurred after he submitted his bar application.

Mr. Cramer attempts to minimize his behavior by distinguishing his conduct from that of the applicants in *In re*

*Application of James G.*, 296 Md. 310, 462 A.2d 1198 (1983) and in *In re Application of A. T.*, 286 Md. 507, 408 A.2d 1023 (1979). In the case of *James G.*, we admitted an applicant who committed (16 years earlier) conspiracy to commit forgery, forgery and uttering, murder, and assault over a six-month period for which he served 21 months incarceration. *James G.*, 296 Md. at 311, 462 A.2d at 1199. Both the Character Committee and the Board of Law Examiners held hearings to determine whether the applicant possessed good moral character. *Id.* During their inquiry, the applicant was admitted to the District of Columbia Bar and had been practicing law for two years by the time his case came before this Court. *James G.*, 296 Md. at 312, 462 A.2d at 1200. In addition, over ten years had passed since the applicant's last criminal offense. *Id.* This Court found that the applicant's burgeoning legal career in the District of Columbia, the significant period of time that elapsed from his last transgression, and the solid character witnesses he provided evidenced his rehabilitation and possession of good moral character. *James G.*, 296 Md. at 314, 462 A.2d at 1202. Similarly, in the *A. T.* case, we admitted an applicant who had a history of drug abuse and a criminal record because his last offense occurred more than thirteen years before the Board hearing and he produced character witnesses who gave strong endorsements.

The *James G.* and *A. T.* cases are distinguishable from Mr. Cramer's case in that his last offense occurred after he submitted his application for admission to the Maryland Bar. Although Mr. Cramer was not required to present independent character evidence, he failed to provide any character witnesses at either the Character Committee hearing or the hearing before the Board. Moreover, we note that although the applicants in the *James G.* and *A. T.* cases had more severe criminal records than Mr. Cramer, we have recognized that, "because we make an independent review of the record, we always will be confronted with behavior that is more or less egregious than in other cases related to the admission of candidates to the Bar." *Application of Strzempek*, 407 Md. at 115, 962 A.2d 988 at 995. Here, Mr. Cramer's conduct may

not be as severe as prior applicants; nevertheless, he has displayed a lack of candor and truthfulness, problems with alcohol consumption, and total disregard for the bar application process.

## IV. CONCLUSION

Therefore, our review of the record leads us to conclude that Mr. Cramer failed to meet his burden of proving that he possessed the requisite moral character and fitness to be a member of the Maryland Bar. Not unlike the Board, we are concerned about the applicant's failure to disclose material facts on his application, his exercise of poor judgment with regard to the application process and financial debt, his prior alcohol-related convictions, and his failure to demonstrate that he addressed adequately the underlying cause(s) of his prior convictions.

**IT IS SO ORDERED.**